UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHERRIE L. EDWARDS,

                              Plaintiff,

                                                                                         Case # 18-CV-862-FPG

v.

                                                                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Sherrie L. Edwards brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 19. For the reasons that follow, the Commissioner's motion is DENIED, Edwards's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

On January 15, 2015, Edwards applied with the Social Security Administration (the "SSA") for DIB alleging disability beginning in August 2014. Tr.[1] 11, 72–73. She alleged disability due to stroke, 100% occluded carotid arteries, weakness on the left side of her body, speech issues, short term memory issues, tiring easily, concentration issues, diabetes, and anemia. Tr. 72–73. In May 2017, Edwards and a vocational expert ("VE") appeared at a hearing before

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

Administrative Law Judge Bryce Baird ("the ALJ"). Tr. 11, 22. On October 4, 2017, the ALJ issued a decision finding that Edwards was not disabled. Tr. 11–22. On June 5, 2018, the Appeals Council denied Edwards's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether [claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act,

meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *See id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I. The ALJ's Decision**

The ALJ analyzed Edwards's claim for benefits using the process described above. At step one, the ALJ found that Edwards had not engaged in any substantial gainful activity since her alleged onset date. Tr. 13. At step two, the ALJ found that Edwards had five severe impairments: anemia, arthritis of the left knee, adjustment disorder with depressed and anxious mood, obesity, and residual effects of cerebrovascular accident. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 14

Next, the ALJ determined that Edwards had the RFC to perform sedentary work with a panoply of explicit limitations. Tr. 16–20. Specifically, the ALJ found that Edwards could: lift and carry ten pounds occasionally and five pounds frequently; sit for six hours and stand or walk for two hours in an eight-hour day; occasionally balance, stoop, and climb ramps and stairs; frequently reach and overhead reach with the left arm; and frequently handle and finger objects with the left hand. Tr. 14. The ALJ found that Edwards could not: climb ladders, ropes, or scaffolds; kneel, crouch, or crawl; be exposed to unprotected heights, moving machinery, bright or flashing lights; perform work that requires driving a vehicle or travel to unfamiliar places; or work on a production line. *Id.* The ALJ further found that Edwards was limited to: simple, routine tasks that can be learned after a short demonstration or within 30 days; and positions that would allow her to be off task up to five percent of the workday, in addition to regularly scheduled breaks, and allow for variations in productivity throughout the day. *Id.* At steps four and five, the ALJ found that Edwards could not perform her past relevant work but that there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 20. The ALJ therefore

4

found that Edwards had not been disabled from August 13, 2014 through the date of his decision. Tr. 21.

## II. Analysis

Edwards makes several arguments related to the ALJ's RFC determination with respect to her mental limitations. ECF No. 13-1 at 12–18. One of her arguments is that the limitation that she would be off task up to five percent of the workday is not properly supported. ECF No. 13-1 at 17–18. The Court agrees.

The ALJ found that Edwards had medically determinable impairments consisting of anemia, arthritis of the left knee, adjustment disorder with depressed and anxious mood, obesity, and residual effects of cerebrovascular accident (referred to sometimes as "CVA" or a "stroke") and that these "impairments significantly limit [her] ability to perform basic work activities." Tr. 13. In his RFC analysis, the ALJ found that, despite these impairments, Edwards was capable of performing sedentary work with additional, highly specific restrictions. Tr. 16–20. One particularly specific limitation is that "she would be off-task up to 5% of the" workday. Tr. 16.

Beyond curtly stating that it was "[d]ue to residual stroke symptoms," the ALJ's opinion provides no explanation as to how he derived the off-task limitation. Tr. 16–20. Nor does the Commissioner offer an explanation. ECF No. 19-1 at 10–18. The Court must look to the hearing transcript to find any hint as to the ALJ's basis for the limitation. At the hearing, the ALJ explained that the limitation was attributable to residual stroke symptoms, specifically "fatigue and inability to maintain concentration for extended periods of time." Tr. 64–65. Although Edwards testified that she experiences fatigue and severe short-term memory issues, Tr. 41, 46–47, there is nothing in the record that supports the ALJ's specific conclusion that these limitations could be accounted for by allowing her to be off task up to five percent of the workday.

Generally speaking, "the ALJ must simply explain the link between his RFC assessment and the record evidence supporting that assessment." *Paul v. Colvin*, No. 15-CV-310, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016). "Specific RFC assessments must be based on evidence in the record, not on an 'ALJ's own surmise.'" *Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *5 (W.D.N.Y. Nov. 26, 2019) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order)).

Here, there is no evidence that the ALJ's off-task limitation was based on anything other than his own surmise. The ALJ weighed several medical opinions. The ALJ afforded "some weight" to the consultative psychiatric evaluation of Christine Ransom, Ph.D., and the opinion of a state agency review psychologist, T. Harding, Ph.D. Tr. 19, 76–77, 383–86. Doctors Ransom and Harding both opined that Edwards did not have mental limitations that would impact her ability "to function on a daily basis." Tr. 77, 385. The ALJ effectively rejected these opinions and concluded that additional limitations were warranted. *See Piper v. Comm'r of Soc. Sec.*, No. 18-CV-1311, 2020 WL 4499530, at *3–4 (W.D.N.Y. Aug. 4, 2020) (holding that, although ALJ claimed to give "some weight" to two medical opinions that found no limitations, the ALJ effectively rejected those opinions by finding that additional limitations were warranted (collecting cases)).

The ALJ, however, also gave the report of Ralph H.B. Benedict, Ph.D., "great weight." Tr. 19, 607–10. Doctor Benedict had "no concerns about [Edwards]'s capacity to manage [activities of daily life] effectively" and found that the degree of her impairment is mild. Tr. 610. But he noted that his "findings [we]re *equivocal* with respect to work disability" and opined that "employment with *workplace accommodations* may be possible." *Id.* (emphasis added). Doctor

6

Benedict did not elucidate what workplace accommodations might make employment possible for Edwards. Tr. 607–10.

Accordingly, Doctor Benedict's opinion and the other medical opinions of record do "not contradict th[e ALJ's] highly specific restriction, but [the opinions] do[] not substantially support it, either." *Haygood v. Comm'r of Soc. Sec.*, No. 18-CV-1164, 2020 WL 219145, at *2 (W.D.N.Y. Jan. 15, 2020) (remanding where medical opinion "was too general to substantially support" ALJ's highly specific RFC limitation). In *Cosnyka*, the Second Circuit ordered remand where an ALJ "translated" medical evidence suggesting that the claimant would be off task "ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour." 576 F. App'x at 46. The Second Circuit explained that "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday." *Id.* In short, the ALJ may not weigh evidence and somehow "arrive at specific limitations that do not appear anywhere in that evidence." *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *4 (W.D.N.Y. Apr. 4, 2019) (citing *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.")).

Here, the ALJ did not even explain the link between his off-task limitation and the record evidence. Setting aside that abject failure and looking to the underlying evidence, this case presents a close question. The Second Circuit addressed a similar limitation in *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order). In that case, the ALJ gave "considerable weight" to a medical opinion that claimant "would have minimal to no limitations" but might struggle "to maintain a regular schedule." *Id.* That opinion and other record evidence supported "[t]he ALJ's

7

conclusion that [claimant] could perform light work at a slightly slower than average pace." *Id.* "The fact that the ALJ assigned a particular percentage range (0–10%) to illustrate [claimant]'s limitation d[id] not undermine the fact that the ALJ's finding was supported by substantial evidence." *Id.* (distinguishing *Cosnyka*, 576 F. App'x at 46, because, in that case, "there was no evidentiary basis for the ALJ's conclusion that an applicant needed only six-minutes off per hour"). This case, however, is closer to *Cosnyka* in that the only medical opinion on Edwards's mental limitations accepted by the ALJ, Doctor Benedict's opinion, does not support the ALJ's conclusion and, although Edwards's testimony supports a limitation to some amount of off-task time, her testimony provides no basis for concluding that that amount is five percent of the workday rather than some greater percentage.[2] *See Silkowski v. Comm'r of Soc. Sec.*, No. 18-CV-6727, 2020 WL 1493951, at *6–7 (W.D.N.Y. Mar. 27, 2020) ("[T]he ALJ was required to recontact Dr. Sirotenko to clarify Dr. Sirotenko's opinion. If that proved not to be possible, the ALJ was required to base any specific physical RFC limitation on other evidence in the record, not on his own lay analysis of [claimant]'s medical needs.").

The percent of off-task time was absolutely critical to the disability determination in this matter. The VE testified that, if the off-task time was ten percent or more, the limitation would be "work preclusive." Tr. 66–67. Accordingly, the Court cannot say that the ALJ's failure to tether the percent of off-task time to evidence in the record was harmless error. *See Whalen v. Berryhill*, No. 18-CV-29, 2020 WL 1530847, at *3–4 (W.D.N.Y. Mar. 31, 2020) (holding that ALJ's failure

---

[2] Edwards's testimony seems to suggest that she would be off task a significant portion of the workday either due to her "severe" short-term memory issues or her fatigue. Edwards testified that she frequently forgets to do things around the house, leaves food cooking on the stove, forgets to pick up her son from functions, and gets confused and flustered. Tr. 41. With respect to her fatigue, Edwards testified that she does chores for an hour and a half each day, but she needs to break up the work throughout the day. Tr. 59. She further reported that, although she works two and a half hours each day as a school lunch monitor, she is able to rest in a chair or by leaning in a windowsill, she rests for "about" a half hour after each shift, and she often needs a nap when she gets home from work. Tr. 40–41, 46–47, 58–61.

to tether finding that claimant could "frequently" perform a task to the record evidence was not harmless error where VE testified that claimant would be precluded from relevant work if limited to performing such tasks only "occasionally"); *Silkowski*, 2020 WL 1493951, at *6–7 (remanding where ALJ failed to tether conclusion that claimant could "chang[e] position every 60 minutes for up to 5 minutes, without leaving the workstation" to record evidence and VE testified that claimant "could not do any of the compatible jobs if she needed to change positions every thirty minutes"). The ALJ's determination here is particularly problematic given that it suggests the ALJ tailored his RFC assessment based on the VE's opinion instead of the record evidence. *Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *11 (W.D.N.Y. Dec. 17, 2019) ("At best . . . the ALJ's conclusion comes from whole cloth. At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of 20% . . . 'would degrade the individual's productivity to unacceptable levels.'").

Accordingly, the Court remands this case because the ALJ's specific off task time limitation is not supported by substantial evidence. *See Milliken v. Berryhill*, No. 16-CV-297, 2017 WL 3208635, at *17 (W.D.N.Y. July 28, 2017) (remanding where the ALJ did "not point to any indication in the record as to why [a] particular duration [of breaks] would permit Plaintiff to finish forty hours of light work a week"); *Quinn v. Colvin*, 199 F. Supp. 3d 692, 713 (W.D.N.Y. 2016) (holding that the ALJ erred in finding that the claimant needed two minute breaks because no evidence supported the limitation).[3]

---

[3] This is not a case in which the ALJ simply exercised his prerogative to weigh the record evidence to make an RFC determination. Accordingly, the cases cited by the Commissioner for that proposition are inapt. *See, e.g.*, *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018) (summary order).

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 19, is DENIED and Edwards's Motion for Judgment on the Pleadings, ECF No. 13, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 18, 2020
      Rochester, New York

                                             HON. FRANK P. GERACI, JR.
                                                    Chief Judge
                                          United States District Court